550 So.2d 102 (1989)
Kennedy EBERHARDT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-891.
District Court of Appeal of Florida, First District.
September 26, 1989.
*103 Michael E. Allen, Public Defender, and Phil Patterson, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Appellant, Kennedy Eberhardt, was charged with unlawfully entering a structure located in Tallahassee on the night of September 20, 1987, with the intent to commit an offense therein, contrary to section 810.02, Florida Statutes. Eberhardt pleaded not guilty, was tried, and was adjudicated guilty of burglary of a structure as charged pursuant to the jury verdict. He appeals the judgment on numerous grounds. Because several errors deprived him of a fair trial, we reverse and remand for a new trial.
Briefly stating the context of the case, Douglas Cooksey, the owner of the subject premises, found Eberhardt asleep or passed out in an office chair at a desk on a Sunday morning. Eberhardt's shirt had been taken off and was found in another office. A key to the office, a pocket knife, and a monogrammed money clip bearing Cooksey's name, all normally kept in his desk drawer, were found in Eberhardt's pockets. Whether Eberhardt was merely asleep or passed out due to overindulgence of alcohol or drugs and unable to form the requisite intent to commit an offense upon entering the building was critical to the defense at trial.

I.
We first address the defendant's argument that the trial court erred in denying his motion for a new trial because he was brought in prison clothing before the venire. It appears that prior to jury selection and while clad in readily recognizable jail clothes, Eberhardt was brought into the courtroom and apparently observed by the venire. At that point defense counsel moved without success for a continuance so that a jury could be chosen from a venire that had not observed appellant so dressed. Before sentencing, counsel moved unsuccessfully for a new trial on the same ground.
*104 Eberhardt had requested that the state allow him to dress for trial in normal clothing. His family were supposed to bring clothes to the jail before the trial, but they did not arrive in time, and he was moved to the courtroom in jail clothes. Shortly thereafter Eberhardt's family arrived with his clothes and he changed clothes prior to the jury panel's being seated in the jury box and examined on voir dire. Citing Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, reh'g denied 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976), Eberhardt argues that it was reversible error for the state and the court to compel him to appear before the venire in jail clothes rather than to provide him with appropriate clothing, even though his family failed to timely arrive, and that the court proceedings should have been delayed temporarily to provide him with appropriate clothing.
The state argues that no violation of Estelle occurred because the failure of Eberhardt's family to bring his clothes in a timely manner was not the fault of the state; and furthermore, when the voir dire of the jury took place, defendant was dressed in the clothes they had brought. Therefore, the state argues, any problem with Eberhardt's dress in the courtroom was his own fault and is a matter concerning which he should not be heard to complain. The state further contends that Eberhardt has failed to demonstrate prejudice and preserve this issue for appellate review because he is required by law to show affirmatively on the record that the venire actually saw the prison clothes and that the viewing was more than incidental and resulted in prejudicial identification. The state cites, in support of this contention, Maxwell v. Wainwright, 490 So.2d 927 (Fla.), cert. denied 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); Elledge v. State, 408 So.2d 1021 (Fla. 1981); cert. denied 459 U.S. 981, 103 S.Ct. 316, 74 L.Ed.2d 293 (1982), reh'g denied 459 U.S. 1137, 103 S.Ct. 771, 74 L.Ed.2d 984 (1983); and Gates v. Zant, 863 F.2d 1492 (11th Cir.), reh'g denied 880 F.2d 293 (1989). Pointing out that Eberhardt's counsel did not ask any potential juror whether he or she saw the defendant in prison clothes and failed to establish the requisite prejudice, the state argues it would be pure speculation to conclude that the defendant was prejudiced within the meaning of Estelle.
The law now recognizes that once the defendant has requested to appear in court in other than prison clothes, the state must make appropriate provisions to this end. We conclude that even though Eberhardt had asked his family to bring the necessary clothing, the state was not necessarily relieved of its obligation by the family's undertaking should the clothing not arrive on a timely basis. However, a defendant desiring to establish that he was prejudiced because forced to stand trial in prison clothing must make a timely objection and establish on the record that he was identified by a juror as being a prisoner by reason of his wearing the prison uniform. Torres-Arboledo v. State, 524 So.2d 403 (Fla.), cert. denied ___ U.S. ___, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988). Although Eberhardt's counsel made a timely objection, counsel did not thereafter question the jury to establish on the record that at least one member saw him so attired and recognized his status as a prisoner. Nor did she undertake to challenge any of the jurors for cause on this ground. Where a defendant has so established his objection, prejudice is shown and the defendant is held to be denied a fair trial. Although we conclude that it was error for the court to permit the venire to see Eberhardt in the courtroom in prison clothes, defense counsel did not properly preserve this objection as a basis for reversal. See Torres-Arboledo v. State, supra; Hildwin v. State, 531 So.2d 124 (Fla. 1988), aff'd ___ U.S. ___, 109 S.Ct. 2055, 104 L.Ed.2d 728, reh'g denied ___ U.S. ___, 109 S.Ct. 3268, 106 L.Ed.2d 612 (1989).

II.
Eberhardt next contends that he was erroneously prevented from adducing evidence establishing that he was too intoxicated and "high" on drugs to form the requisite criminal intent to commit an offense upon entering the building. He argues *105 that he was denied due process of law and the assistance of counsel because counsel was prohibited from eliciting testimony from witnesses that Eberhardt appeared to them to be passed out; that is, in a state or condition of severe intoxication.
On direct examination by the prosecutor, two witnesses testified that the defendant was found asleep in a desk chair. On cross-examination, counsel for defendant was prohibited from asking whether the defendant appeared to be under the influence of drugs or alcohol. A lay witness may testify to physical appearance or observable intoxication. Ehrhardt, Florida Evidence § 701.1, n. 18 (2d ed. 1984). The questions on cross-examination did not go beyond the scope of the questions asked on direct examination. Once the state asked about the defendant's condition and appearance when found in the building, the defense had a right to question and explore all the facts relevant to defendant's state or condition, including intoxication, when discovered there. Steinhorst v. State, 412 So.2d 332, 337 (Fla. 1982). One of the fundamental purposes of cross-examination is to test, weaken, or demonstrate the impossibility of the testimony on direct examination, and the scope of cross-examination cannot be unduly limited so as to prevent counsel from carrying out this purpose.
Moreover, Eberhardt contends that the trial court reversibly erred in not allowing his counsel to cross-examine Officer Glisson regarding all the statements Eberhardt made to him after arrest. The following question was asked on cross-examination by the defense counsel:
Q. Mr. Poitinger asked you what the Defendant said about the shirt. What else did Mr. Eberhardt tell you?
MR. POITINGER: Your Honor, I'm going to object. Can we approach the bench?
(R. 164). The state's objection was sustained. Despite the state's argument that the officer was being asked to recite conversations other than the one he mentioned on direct examination that involved exculpatory statements, that is not manifest from this question and no proffer of the answer from the witness was made. Once direct testimony of a conversation between Glisson and defendant had been admitted, the defense became entitled to cross-examine the witness concerning the whole of the conversation. Guerrerro v. State, 532 So.2d 75, 77 (Fla. 3d DCA 1988). Because portions of the defendant's conversation with the officer were admitted on direct examination, the rule of completeness generally allows admission of the balance of the conversation as well as other related conversations that in fairness are necessary for the jury to accurately perceive the whole context of what has transpired between the two. Ehrhardt, Florida Evidence, § 108.1 (2d Ed. 1984). Once the officer testified in the state's case-in-chief about one portion of Eberhardt's statements to him, the court erred in sustaining the state's hearsay objection for the reason that his statements he was "high" or intoxicated were self serving. Heathcoat v. State, 430 So.2d 945 (Fla. 2d DCA), aff'd, 442 So.2d 955 (Fla. 1983).

III.
Defendant next contends that the trial court erred in failing to instruct the jury on his defense of voluntary intoxication as requested. Voluntary intoxication is recognized as a valid defense in Florida to specific intent crimes. Linehan v. State, 476 So.2d 1262, 1264 (Fla. 1985). A defendant is entitled to a jury instruction where any evidence presented at trial supports his theory of defense, even where such evidence is brought out on cross-examination. Gardner v. State, 480 So.2d 91, 92-3 (Fla. 1985). The instruction need not be given even though the evidence shows the use of intoxicants if the evidence fails to show intoxication. Lambrix v. State, 534 So.2d 1151 (Fla. 1988).
Although the evidence of intoxication in this case was marginal, we conclude that it was sufficient to warrant such an instruction. The building owner, Cooksey, testified on cross-examination that it was his impression upon seeing defendant that he was passed out. Officer Whaley testified on direct examination that, upon *106 being awakened in the office, defendant appeared spaced out. His proffered, but excluded, testimony was that defendant had told him he "was high and needed a place to crash." Although it is not error to refuse to give the instruction on intoxication where there is no evidence as to the amount of intoxicants consumed prior to the commission of a crime and no evidence of intoxication, Gardner v. State, 480 So.2d 91 (Fla. 1985); Jacobs v. State, 396 So.2d 1113 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981), these two requirements are alternative in nature and not necessarily conjunctive. Evidence of one's condition of intoxication may suffice even though there is no direct evidence of the amount of intoxicants consumed. We conclude that the evidence of defendant's intoxication, including that which should have been admitted had the testimony on cross-examination been allowed, was sufficient to warrant instructing the jury on this defense. See Heathcoat, 430 So.2d 945; Mellins v. State, 395 So.2d 1207 (Fla. 4th DCA), rev. denied, 402 So.2d 613 (Fla. 1981).

IV.
Eberhardt next objects to the testimony admitted at trial proving a burglary of the same premises on September 19, 1987, the night before the crime charged against him, contending that this evidence improperly linked him to that earlier, uncharged crime. On direct examination, the owner of the business was questioned by the prosecutor as follows:
Q. All right, sir. Now I'm going to call your attention to the date on or about the 20th of September, 1987. Did you have an occasion to go to your place of business and find anything unusual?
A. Yes, sir.
Q. Okay. If you will, what did you find when you went  first of all, why did you go there?
A. I had been notified the day before  MS. WILLIAMS: Your Honor, I object... .
The objection was overruled, and in response to the prosecutor's questions, Mr. Cooksey described the burglary of the premises the night before defendant entered it. But the reason why Mr. Cooksey happened to go to his own place of business on a Sunday morning was simply not a material fact in issue. The testimony was, therefore, not relevant to the state's case, and the court erred in overruling the objection. The admission of evidence of a burglary that occurred the night before Eberhardt was involved and for which he was not charged was highly prejudicial, and such prejudice manifestly outweighed any probative value of this irrelevant evidence.

V.
Finally, Eberhardt complains that deliberate prosecutorial overreaching during final argument was fundamental error and denied him a fair trial. The argument complained of is as follows:
PROSECUTOR: If you believe that somehow we are to excuse and justify this defendant because allegedly he was loaded, what does that do to our property rights? Does that mean that my house, her home, his place of business can be violated by anybody as long as they are drunk or under the influence of drugs? Welcome, drunks, come into my house? Wrong. I don't think that our founding fathers ever intended that to be the law in this country and I anticipate that your verdict is going to confirm what I think, and that we are not going to allow this defendant, just because he claims through counsel that he was so loaded he didn't know what he was doing, that we are going to excuse that somehow.
Now, how many times have we heard the old adage, "The devil made me do it" or "Wine made me do it"... . The problem with that is right here between our ears. It's called a brain. Because of this brain, I'm able to determine for myself whether I should do something and the consequences of doing it. And I submit to you that it's time for this jury with its verdict to deliver a message to Mr. Eberhardt, use your head, don't commit any more crimes, because, as I asked you initially, this case is deserving of a verdict that *107 speaks the truth. And that verdict is guilty of burglary of a structure as charged.
(R. 200-201).
This argument was highly improper in at least two respects. The argument misstated the law of the defense of intoxication and intentionally misled the jury by imploring them to believe "that our founding fathers never intended that to be the law in this country... ." This amounts to an overt appeal to the jury's sympathy and borders on a "golden rule" argument. The reference to Eberhardt's claim of intoxication "through counsel" amounts to a comment on his failure to take the stand and testify to the facts himself, in derogation of the defendant's right to remain silent. Such argument is erroneous and may be grounds in itself for a new trial. See, e.g., Redish v. State, 525 So.2d 928 (Fla. 1st DCA 1988); Rosso v. State, 505 So.2d 611 (Fla. 3d DCA 1987).
The state argues that no objection was made and no curative instruction or motion for mistrial was made by defense counsel, and therefore the error has not been properly preserved for appellate review and a ground for reversal. Eberhardt argues that the argument was so overreaching that it amounted to fundamental error. We need not reach that question, however, because reversal for a new trial is required on other grounds. We are confident that upon retrial the argument of counsel for the state will comport with the requirements of the law and professional standards.
REVERSED AND REMANDED FOR NEW TRIAL.
ERVIN, J., concurs.
WENTWORTH, J., concurs in conclusion.